**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

<u>Vernon Dingman, III</u>

    v.                                            Civil No. 09-CV-0257-JL

<u>Precinct of Haverhill Corner et al.</u>

**<u>ORDER</u>**

Before the court is the Complaint (doc. no. 1) filed by Vernon Dingman, III, citing 42 U.S.C. § 1983, alleging that the Precinct of Haverhill Corner ("Precinct"), through its Commissioners, defendants Mike Lavoie, Albion Estes, and Roderick Ladd, denied him due process in violation of his rights under the Fourteenth Amendment by ordering him to repair the water line to his house at the risk of having his water shut off.  In the Complaint (doc. no. 1), Dingman has requested immediate injunctive relief.  The Complaint is before me for preliminary review to determine, among other things, whether the complaint states any claim upon which relief might be granted.  <u>See</u> 28 U.S.C. § 1915(e)(2)(B); United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(1)(B).

<u>Standard of Review</u>

Under this Court's local rules, when a plaintiff commences an action pro se and in forma pauperis, the Magistrate Judge conducts a preliminary review.  LR 4.3(d)(1).  In conducting the preliminary review, the Court construes all of the factual

assertions in the pro se pleadings liberally, however inartfully pleaded.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pro se pleadings liberally in favor of the pro se party).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly [pleaded]."  Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United States, 540 U.S. 375, 381 (2003) (courts may construe pro se pleadings to avoid inappropriately stringent rules and unnecessary dismissals).  This review ensures that pro se pleadings are given fair and meaningful consideration.

   To determine if a pro se complaint should be dismissed for failing to state a claim on which relief could be granted, the Court must consider whether the complaint, construed liberally, Erickson, 551 U.S. at 94, "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Id. Inferences reasonably drawn from the plaintiff's factual allegations must be accepted as true, but the Court is not bound to credit legal conclusions, labels, or naked assertions, "devoid of 'further factual enhancement.'" Id. (citation omitted). Determining if a complaint states a viable claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950 (citation omitted).

## Background

The Precinct is a local government unit providing a public supply of drinking water for certain landowners including Dingman. A Precinct water main runs along New Hampshire Route 10, a state highway, in front of Dingman's house, and Dingman's water line connects to the main and runs across his property from the curb to his house. The Precinct installed a new water main approximately ten years ago along Route 10. Before the Precinct installed the new water main, there was no visible water leakage or erosion on Route 10 near Dingman's property.

Dingman received a letter by certified mail from the Precinct dated July 29, 2009, setting forth the Precinct's allegations and its demand that he repair his water line. Under Fed. R. Civ. P. 10(c), this letter shall be considered to be part

of the Complaint for all purposes, as it is a written document attached to the Complaint.

The Precinct alleges in the July 29 letter that Dingman's water line is leaking somewhere between the curb and his house, and that Dingman is responsible for the leak.  The letter states that the leak has been confirmed by Woodsville Water & Light -- the Precinct's water supply operator -- and that it has been reviewed by a consultant from Granite State Rural Water Association.  The letter states that the leak threatens the public health, due to the risk that back siphonage will contaminate the public water system, and presents a public safety threat, due to the risk of subsidence and erosion on Route 10 and surrounding properties.

The July 29 letter recounts a brief history of communication between Dingman and the Precinct regarding the leak, including a letter allegedly sent to Dingman on June 2, 2009, and a conversation between Dingman and Precinct Commissioner Mike Lavoie on July 2, 2009, in which Lavoie told Dingman that he was responsible for repairing the leak.  The July 29 letter concludes with a demand "that the broken pipe must be repaired within the next seven days (by August 6th) or your water will be shut off."

Dingman did not receive the June 2, 2009 letter from the

Precinct, or any information from Granite State Rural Water Association or Woodsville Water & Light regarding the leak. No State agency with authority over state highways has contacted Dingman regarding problems relating to Route 10. Dingman has seen no evidence to substantiate the Precinct's allegations that he is responsible for a water problem along Route 10.

Dingman responded to the July 29 letter by filing this action against the Precinct and its Commissioners under 42 U.S.C. § 1983. Dingman claims that the Precinct denied him due process under the Fourteenth Amendments by engaging in "shake down" tactics to cause him to pay for repairs that are not his responsibility and by threatening to shut off his water supply without providing adequate notice or proof of his liability.

### Discussion

The Fourteenth Amendment provides that states shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "This guarantee has both substantive and procedural components." Pagan v. Calderon, 448 F.3d 16, 32 (1st Cir. 2006). Dingman has invoked both aspects of the due process guarantee.

A court evaluating due process claims like Dingman's must first determine whether the plaintiff has been deprived of a

constitutionally protected interest in life, liberty, or property.  A plaintiff asserting a procedural or substantive due process claim, and challenging specific acts of government authorities, must allege that she or he was deprived of such a protected interest.  See id. (where "plaintiff's substantive due process claim challenges the specific acts of a state officer, the plaintiff must show both that the acts were so egregious as to shock the conscience and that they deprived him of a protected interest in life, liberty, or property"); see also Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 30 (1st Cir.2008) ("The test for a procedural due process violation requires the plaintiffs to show first, a deprivation of a protected property interest, and second, a denial of due process.").

Property interests do not arise directly from the United States Constitution.  An independent source of a property interest, such as state law, must be identified.  Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 9 (1978).  "[F]ederal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause."  Id. (citation omitted).  "In order to be 'legitimate,' the entitlement must be grounded in some statute, rule, or policy."  Perez-Acevedo, 520 F.3d at 30 (citation

omitted).

Property interests derived from state law and protected under the Constitution can include a right to the maintenance of municipal utility service.  See Memphis Light, 436 U.S. at 11. In New Hampshire, taxpaying customers may have a protected interest in continued water service that cannot be taken away without due process of law.  See Scheele v. Vill. Dist. of Eidelweiss, 122 N.H. 1015, 1020, 453 A.2d 1281, 1284 (1982) (water district's withholding water service to taxpayers in order to coerce payment of debt owed to third party is unconstitutional).

Assuming that Dingman has a property interest in continuing access to the Precinct water supply, I conclude that Dingman has not alleged facts indicating that he has suffered a deprivation of this interest at this time.  Dingman has alleged only that the Precinct has threatened to shut off his supply, not that the Precinct has acted on its threat.  See Magnuson v. City of Hickory Hills, 933 F.2d 562, 566 (7th Cir. 1991) (city's threat of terminating water service did not deprive plaintiffs of any protected interest).  Therefore, the Court's consideration of the adequacy of the Precinct's pretermination notice and any opportunity provided for Dingman to challenge the Precinct's

7

evidence would be premature at this time, as would be an assessment of Dingman's substantive due process claim.

Given the gravity of the risk to Dingman and his wife if the Precinct were to shut off his water supply, and the time that has passed since Dingman received the July 29 letter, I conclude that Dingman should be given an opportunity to amend the Complaint. See LR 4.3(d)(1)(B)(ii) (magistrate judge may grant party leave to file amended pleading in accordance with magistrate judge's directives).  In an Amended Complaint, Dingman may allege additional facts showing whether his water has been shut off, how he has been denied adequate notice and an opportunity to challenge the termination, and how the Precinct's conduct has been arbitrary, unjustifiable, "'extreme and egregious,' . . . 'truly outrageous, uncivilized, and intolerable,'" such that it has "shocked the conscience" and violated the substantive due process guarantee under the Fourteenth Amendment.  Pagan, 448 F.3d at 32 (citation omitted).

## Conclusion

Dingman shall file an Amended Complaint within 30 days of the date of this Order stating:  (1) whether and when his water service was shut off; and (2) the substance of any further contacts he has had with the Precinct since July 29, 2009,

relating to his claims in this action.  Dingman may attach to the Amended Complaint any further correspondence that he has received from the State, the defendants, or their contractors or consultants, including Woodsville Water & Light and Granite State Rural Water Association, regarding his claims and the Precinct's allegations.  Dingman's request for immediate injunctive relief, set forth in the Complaint (doc. no. 1), will be evaluated in connection with the facts alleged in his Amended Complaint.  If Dingman fails to comply with this Order as directed within 30 days, the court may dismiss Dingman's Complaint.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date: November 24, 2009

cc:   Vernon Dingman, III, pro se

JRM:nmd